REISSUED FOR PUBLICATION

SEP 8 2017

OSM

U.S. COURT OF FEDERAL CLAIMS

# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 14-110V
Filed: August 14, 2017

```
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *
EMILEE M. LESTER,                          *      UNPUBLISHED
                                           *
               Petitioner,                 *      Interim Attorney's Fees and Costs;
v.                                         *      Withdraw of Counsel; Respondent Does
                                           *      Not Object; Excessive Hours Billed.
SECRETARY OF HEALTH                        *
AND HUMAN SERVICES,                        *
                                           *
               Respondent.                 *
                                           *
                                           *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

*Andrew Krueger, Esq., Krueger & Hernandez S.C., Middleton, WI, for petitioner.*
*Debra Begley, Esq., U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION ON INTERIM ATTORNEY'S FEES AND COSTS[1]

**Roth,** Special Master:

On February 7, 2014, Madison and Sarah Lester filed a petition on behalf of their then-minor child,[2] Emilee M. Lester ("Ms. Lester" or "petitioner"), for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 *et seq*.[3] (the "Vaccine Act" or "Program"). Petitioner alleged that she developed "abdominal pain, neck and back pain, joint pain,

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, it will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002 (codified as amended at 44 U.S.C. § 3501 note (2012)). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to delete medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will delete such material from public access.

[2] Emilee M. Lester turned 18 years old on November 9, 2016, and was substituted in as petitioner on January 23, 2017. *See* Order, ECF No. 46.

[3] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

headaches, and myofascial pain" after receiving human papillomavirus ("HPV") vaccinations on July 27, 2010, September 30, 2010, and February 4, 2011. *See* Petition ("Pet"), ECF No. 1, at 1-2.

On July 19, 2017, petitioner's counsel, Mr. Andrew Krueger, filed a motion for interim attorneys' fees and costs ("Motion for Fees") requesting attorneys' fees in the amount of 25,077.20 and attorneys' costs in the amount of $1,951.89, for a total amount of $27,029.09. Motion for Fees, ECF No. 51, at 5.

On August 7, 2017, respondent filed a response to petitioners' Motion for Fees. Response, ECF No. 53. Respondent provided no specific objection to the amount requested or hours worked, but instead, "defers to the Special Master to determine whether or not petitioner has met the legal standard for an interim fees and costs award" but was otherwise "satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." Response at 2. Petitioner filed a Reply on August 14, 2017. ECF No. 54.

After careful consideration, the undersigned has determined to **grant the request in part** for the reasons set forth below.

## I.   Procedural History

This case was filed on February 7, 2014 and was initially assigned to now-Chief Special Master Dorsey.[4] ECF. No. 1-2. Petitioner filed several medical records, including her vaccine records on April 7, 2014. Pet. Ex. 1-5, ECF No. 6. Thereafter, petitioner requested and was granted four extensions of time ("MFET") within which to file the outstanding medical records until the record was completed on March 5, 2015. *See* MFET, ECF Nos. 8, 11, 16, 18; Order, ECF Nos. 9, 12, 17, 19; Pet. Ex. 6-11, ECF Nos. 10, 15, 20; Statement of Completion, ECF No. 21.

On April 6, 2015, respondent filed a status report stating that respondent believed the record to be substantially complete but settlement discussions would be premature at that time. Respondent Status Report ("Res. S.R."), ECF No. 22.

On June 5, 2015, respondent filed a Rule 4 report ("Rule 4 Rpt."). Respondent submitted that petitioner had not alleged a specific diagnosis, but had only alleged pain, which was a symptom of an underlying cause. According to respondent, there were many alleged diagnoses in the medical records but petitioner did not allege that any of these specific condition were caused by her vaccinations. Rule 4 Rpt. at 7-8, ECF No. 24. Additionally, respondent stated that many of petitioner's symptoms began outside the statute of limitations. According to respondent, the petition was filed on February 7, 2014, so petitioner could only seek compensation for any injuries that began after February 7, 2011. If petitioner suffered any injury that began more than 36 months before the filing of her petition, petitioner's claim was time barred. *See Cloer v. HHS*, 654 F. 3d. 1322, 1325 (Fed. Cir. 2011), *cert. denied*, 132 S. Ct. 1908 (2012). Rule 4 Rpt. at 8-9. More specifically, the medical records indicated that petitioner's abdominal pain, shoulder pain, headaches, and neck pain all began before February 4, 2011, the date of the third HPV vaccination.

---

[4] Special Master Dorsey was elevated to Chief Special Master on September 1, 2015.

2

*Id.* at 9; Pet. Ex. 2 at 17, 37; Pet. Ex. 4 at 21; Pet. Ex. 5 at 20-22, 49. Respondent further suggested several possible alternative causes for petitioner's symptoms. Rule 4 Rpt. at 9-10.

Following a Rule 5 status conference on July 21, 2015, petitioner was ordered to file medical records that remained outstanding and a status report addressing petitioner's lack of a diagnosis by September 4, 2015. Scheduling Order, ECF No. 25. Petitioner was ordered to file an expert report by October 19, 2015.[5] *Id.* On September 3, 2015, petitioner filed a Motion for Extension of Time until November 6, 2015, to file outstanding medical records and a status report; this request was granted. Fifth MFET, ECF No. 26; Order, ECF No. 27.

On October 21, 2015, this case was reassigned to me. ECF No. 29.

On November 4, 2015, petitioner filed her outstanding medical records. Pet. Ex. 12-15, ECF No. 30. The following day, petitioner filed a status report stating that all outstanding medical records had been filed, and "petitioner intended to pursue an aggravation and/or direct cause claim of premature ovarian failure as soon as diagnosed [by a] treating doctor and/or petitioner's expert." Pet. S.R., ECF No. 31. Petitioner filed an additional status report on December 7, 2015, requesting 30 days to discuss with her counsel the difficulty linking the vaccine to an injury, and her options for moving forward. Pet. S.R., ECF No. 32. Petitioner further advised that she was still waiting on an opinion from an expert as to whether this was a premature ovarian insufficiency case. *Id.* Petitioner was ordered to file a status report by January 6, 2016. Non-PDF Scheduling Order, issued Dec. 7, 2015.

In petitioner's January 6, 2016 status report, petitioner requested 30 days to discuss the lack of a diagnosis of premature ovarian insufficiency and possible options for moving forward; this request was granted.[6] Pet. S.R., ECF No. 33; Non-PDF Scheduling Order, issued Jan. 11, 2016. Petitioner filed a status report on February 8, 2016, requesting that the court allow petitioner 45 days to advise the court as to how petitioner intended to proceed.[7] Pet. S.R., ECF No. 34. The status report also noted that petitioner would like to see her primary care physician again before making a decision on whether to move forward. *Id.* Petitioner was ordered to file a status report by March 28, 2016. Non-PDF Scheduling Order, issued Feb. 10, 2016.

---

[5] Petitioner's billing records indicate that an expert was not contacted until November 30, 2015, when Mr. Mark Krueger sent a letter to Dr. Shoenfeld regarding serving as an expert witness. Motion for Fees, Tab 1, ECF No. 51-1, at 10.

[6] Petitioner's billing records indicate that Mr. Krueger and Ms. Nehring made telephone calls to petitioner on December 15, 16, 17, and 29, to discuss the lack of an expert to opine in this matter and the options for proceeding with or dismissing this claim. Motion for Fees, Tab 1, ECF No. 51-1 at 6. Mr. Krueger also sent a letter to petitioner regarding the inability to link her injury to a vaccination and the need to dismiss her claim. *Id.*

[7] Petitioner's billing records indicate that Mr. Krueger and Ms. Nehring made telephone calls to petitioner on January 6, 19, and 28, and February 2, regarding the issues with her case. Motion for Fees, Tab 1, ECF No. 51-1 at 10-11.

On March 23, 2016, petitioner filed a status report stating that she would like to see an OB/GYN and a rheumatologist. Pet. S.R., ECF No. 36. She also filed a motion for extension of time until July 15, 2016, to allow time to obtain the results and records from those appointments; this request was granted. Sixth MFET, ECF No. 35; Non-PDF Order, issued Mar. 23, 2016. Petitioner filed status reports on July 13, 2016 and August 15, 2016, updating the court on petitioner's ongoing medical treatment at Cincinnati Children's Hospital. Pet. S.R., ECF No. 37; Pet. S.R., ECF No. 39. Petitioner also filed medical records from Cincinnati Children's Hospital on August 15, 2016, which indicated that petitioner would be undergoing testing for postural orthostatic tachycardia syndrome ("POTS").

A status conference was held on August 23, 2016, during which the undersigned suggested that, counsel may want to consider amending the petition to include POTS as one of petitioner's alleged injuries.[8] Scheduling Order, ECF No. 40. Mr. Mark Krueger stated that, since petitioner did not have a definitive diagnosis of her injury, he would like to wait for the results of her upcoming testing for POTS. *Id.* at 1. Petitioner was ordered to file the records of her POTS testing by October 24, 2016. *Id.* at 2. After requesting and receiving an extension of time, petitioner filed medical records from Cincinnati Children's Hospital on October 27, 2016, which indicated that she was diagnosed with POTS. Seventh MFET, ECF No. 41; Non-PDF Order, issued Oct. 24, 2016; Pet. Ex. 17, ECF No. 42.

A status conference was held on December 21, 2016, during which the parties discussed petitioner's co-morbidities, petitioner's ultimate diagnosis, inconsistencies with petitioner's medical history, the timing of onset of symptoms, missing medical records from the Mayo Clinic, and petitioner's lack of an expert report. Scheduling Order, ECF No. 43. Mr. Mark Krueger indicated that petitioner's records were being reviewed by an expert.[9] *Id.* at 2. Petitioner was ordered to file a status report indicating whether she received treatment from the Mayo Clinic by January 23, 2017 and indicating how petitioner intended to proceed by March 21, 2017. *Id.* Petitioner filed a status report on January 23, 2017, advising that she did not receive treatment at the Mayo Clinic, along with a Motion to Amend/Correct the Caption to reflect that petitioner was no longer a minor and should be substituted as petitioner. Pet. S.R., ECF No. 44; Motion to Amend/Correct Caption, ECF No. 45. This Motion was granted. ECF No. 46.

On March 20, 2017, petitioner filed a status report informing the court that the medical expert who was reviewing petitioner's medical files declined to assist in the case on grounds other than the facts of the case. Pet. S.R., ECF No. 47. Petitioner continued to reach out to other experts

---

[8] In his application for interim attorneys' fees and costs, petitioner's counsel incorrectly states that petitioner filed an Amended Petition in January of 2017, alleging that she developed Ehlers-Danlos Syndrome with associated chronic pain, autonomic dysfunction with postural orthostatic tachycardia syndrome ("POTS") as a result of receiving the HPV vaccination. *See* Motion for Fees, ECF No. 51, at 1-2. Petitioner did not file an amended petition; she filed a motion to amend the case caption. *See* Motion to Amend/Correct Caption, filed Jan. 23, 2017, ECF No. 45.

[9] Petitioner's billing records indicate that, between the time that Dr. Shoenfeld and Dr. Hamiel declined to opine in this matter and the status conference held on December 23, 2016, no alternative expert was contacted to review petitioner's medical records. Motion for Fees, Tab 1, ECF No. 51-1, at 10-13.

to assist with the case, but at the time of the status report had not been able to retain a new expert. *Id.* The status report also noted that petitioner's counsel advised petitioner of the court's concerns with the case. *Id.* Petitioner was provided with options for proceeding, including dismissing the claim, proceeding without counsel, and proceeding with the claim if an expert witness could be retained. *Id.* Petitioner was provided with that information two weeks prior to the status report, but had not yet provided counsel with a response. *Id.* Petitioner's counsel requested and was granted 30 days to either inform the court that an expert witness was willing to opine on the case, or a status report indicating whether petitioner would like to dismiss the case. *Id*; *see also* Non-PDF Order, issued Mar. 20, 2017.

Petitioner filed a status report on April 8, 2017, informing the court that petitioner had been unable to locate an expert willing to assist with the case. Pet. S.R., ECF No. 48. Petitioner also informed the court that petitioner's counsel had sent a letter to petitioner and her mother indicating multiple concerns with the case. *Id.* Petitioner's mother responded to counsel, informing him that petitioner was still being diagnosed with additional injuries. *Id.* Petitioner's counsel advised petitioner that it is unlikely he could continue to represent her in this claim and that petitioner could either dismiss the case, or continue on her own or with other counsel. *Id.* Petitioner requested 30 days to notify the court on how petitioner would like to proceed. *Id.* Petitioner was originally given until May 18, 2017 to file the status report, but this deadline was later moved to June 19, 2017, and again to July 19, 2017.[10] Non-PDF Order, issued Apr. 8, 2017; Non-PDF Order, issued May 4, 2017; Non-PDF Order, issued May 9, 2017.

On July 6, 2017, petitioner filed a Motion to Substitute Attorney for Andrew M. Krueger in place of Mark. L. Krueger. Motion to Substitute, ECF No. 49. The motion was submitted in accordance with Vaccine Rule 14(c) and R. Ct. Fed. Cl. 83.1(c)(4)(ii). *Id.* at 1. The Motion stated that, "it is understood by [petitioner] and Andrew M. Krueger, that Andrew Krueger is only being retained as the Attorney of Record in order to file a motion for Interim Fees. Upon completion of the fees request, it is understood that Andrew Krueger, and Krueger & Hernandez, S.C. will withdraw as counsel." *Id.* at 3. The Motion to Substitute was granted on July 6, 2017. Non-PDF Order, issued July 6, 2017.

Petitioner filed a status report on July 19, 2017, informing the court that petitioner's counsel would be filing for fees and withdrawing as counsel. Pet. S.R., ECF No. 50. The court was informed that petitioner would continue with her claim either *pro se*, or with alternative counsel. *Id.*

That same day, a Motion for Interim Attorneys' Fees and Costs as well as a Motion to Withdraw as Attorney was filed. Motion for Fees, ECF No. 51; Motion to Withdraw, ECF No. 52. Respondent filed a response to petitioner's Motion for Fees on August 7, 2017. Response, ECF No. 53. Petitioner filed a reply on August 14, 2017, reiterating her request for interim fees. Reply, ECF No. 54.

---

[10] These extensions were granted due to the unfortunate passing of Mr. Mark Krueger.

## II.   Applicable Law

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, the award of attorneys' fees is automatic. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1).

Additionally, interim fees may be paid at the discretion of the special master. *See Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008)("Interim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained"). Interim fees are particularly appropriate when it is established, "that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim." *Shaw v. Sec'y of Health & Humans Servs.*, 609 F.3d 1372, 1375 (Fed. Cir. 2010).

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "an initial estimate of a reasonable attorneys' fees" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id.*

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

### III.   Discussion

#### A. Interim Fees are Appropriate in this Case

Interim attorneys' fees have been found to be appropriate under the Vaccine Act due to a number of circumstances, including when petitioner's counsel plans to withdraw from the case. *See Woods v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 148, 154 (Fed. Cl. 2012)(affirming that interim fees may be granted when counsel withdraws from the case and petitioner continues to pursue the case, which would otherwise require petitioner's withdrawing counsel to wait for an unknown end date of litigation); *see, e.g., Davis v. Sec'y of Health & Human Servs.*, No. 15-277V, 2016 WL 3999784, at *3 (Fed. Cl. Spec. Mstr. July 5, 2016)(finding it appropriate to award interim fees for the petitioner's attorney who was withdrawing from the case); *Becker v. Sec'y of Health & Humans Servs.*, No. 13-687, 2014 WL 4923160, at *7 (Fed. Cl. Spec. Mstr. Sept. 11, 2014)(noting that other special masters and the Court of Federal Claims have found the withdrawal of counsel can constitute an undue hardship).

This petitioner intends to pursue her claim either *pro se* or with the assistance of another attorney. Pet. S.R., ECF No. 50. Although I do not find the present proceedings to be protracted, I do find that withdrawing counsel may face undue hardship in getting petitioner's cooperation at the end of this matter. I therefore find that resolving counsel's attorneys' fees and costs at this time is warranted.

### B. Reasonable Hourly Rate

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorney's fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id.* This is known as the *Davis County* exception. *See Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[11]

The requested hourly forum rates are consistent with the rates previously found to be reasonable in cases involving Mr. Mark Krueger, Mr. Andrew Krueger, and Ms. Renee Nehring. *See Herrera v. Sec'y of Health & Human Servs.,* No. 15-651V, 2017 WL 1459002 (Fed. Cl. Spec. Mstr. Mar. 29, 2017)*.* Therefore, the undersigned finds the requested rates to be reasonable.

### C. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing

---

[11] The fee schedules are posted on the Court's website. *See* Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys -Forum-Rate-Fee-Schedule2015-2016.pdf (last visited Aug. 7, 2017); Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2017*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2017.pdf (last visited Aug. 7, 2017).

excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26. Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott v. Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at *3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). And "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews v. Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728-29 (affirming the Special Master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same).

Upon review of petitioner's application, the undersigned finds that a number of the hours billed were "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521. Mr. Andrew Krueger billed 5 hours for drafting the interim fees application and affidavit. Motion for Fees, Tab 1, ECF No. 51-1 at 14. Ms. Nehring billed 65.9 hours, of which 40.8 of these hours were telephone communications with the client. Petitioner's attorney billed 6.3 hours of work researching and drafting an amended petition to include a claim for POTS which was never filed with the Court. *Id.* at 13-14. For these reasons, the undersigned finds that the requested $25,077.20 should be reduced by 20%. Accordingly, $20,061.76 is awarded in attorneys' fees.

**D.  Reasonable Costs**

Petitioner has requested $1,951.89 in costs, including $1,000 in expert fees for Dr. Orit Hamiel, the $400 filing fee, and $197.63 in costs associated with obtaining medical records. *See* Motion for Fees, Tab 2-3, ECF No. 51-1. These costs appear to be reasonable and appropriate in light of the facts of this case; therefore, I see no need to reduce them.

**IV. Total Award Summary**

Based on the foregoing, the undersigned **awards the total of $22,013.65**, representing reimbursement for attorneys' fees in the amount of $20,061.76 and costs in the amount of $1,951.89, in the form of a check made payable jointly to petitioner and petitioner's counsel, Andrew M. Krueger, Esq. The Clerk of the Court is directed to enter judgment in accordance with this Decision.[12]

---

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.

**IT IS SO ORDERED.**

s/Mindy Michaels Roth
Mindy Michaels Roth
Special Master